UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | Criminal Action No. 5: 18-059-DCR |
| ) | and |
| V. ) | Civil Action No. 5: 19-416-DCR |
| ) | |
| ERIC CHRISTOPHER CONN, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Defendant/Movant. ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Defendant Eric Conn pleaded guilty to conspiring to defraud the United States, conspiring to escape, and conspiring to retaliate against a witness. He was sentenced to 60 months' imprisonment on each count, to run consecutively, for a total term of 180 months' imprisonment. Conn has now filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 based on claims of ineffective assistance of counsel.

Because Conn has failed to establish that his attorney's assistance fell below an objective standard of reasonableness or that he was prejudiced by counsel's performance, his motion will be denied.

**I.**

Conn was indicted in 2016 on numerous charges arising from his involvement in a well-publicized scheme to defraud the Social Security Administration. [*See* Lexington Criminal Action No. 5: 16-022-DCR.] He retained attorney Scott White, among others, to represent him in the proceeding. In March 2017, he pleaded guilty to an information charging theft of government money and paying illegal gratuities with the understanding that the government

- 1 -

would move to dismiss the charges in Lexington Criminal Action 5: 16-022-DCR at sentencing. [Lexington Criminal Action No. 5: 17-043-DCR] But in June 2017, while on home detention prior to sentencing, Conn removed his electronic monitoring device and fled to Honduras. On July 14, 2017, he was sentenced in absentia to 144 months' imprisonment in Lexington Criminal Action No. 5: 17-043-DCR. Shortly thereafter, Conn was indicted on charges of escape and failure to appear in court. [Lexington Criminal Action No. 5: 17-CR-104-DCR]

Conn was arrested by Honduran authorities and extradited back to the United States in December 2017. Because Conn breached the terms of the plea agreement in Lexington Criminal Action No. 5: 17-043-DCR, the United States elected not to dismiss the charges in Lexington Criminal Action No. 5: 16-022-DCR. Lacking sufficient funds to continue to pay for White's services, Conn asked the Court to appoint White under the Criminal Justice Act, 18 U.S.C. § 3006A. [Lexington Criminal No. 5: 16-022, Record No. 298] The Court determined that Conn qualified for appointed counsel, but declined to appoint White, and instead appointed complex-qualified CJA Panel member Willis Coffey on January 4, 2018. *Id.* at Record No. 302.

Coffey assisted Conn in negotiating the plea agreement into which the parties entered in the instant matter. Conn agreed to plead guilty to an information charging conspiracy to defraud the United States, conspiracy to escape, and conspiracy to retaliate against a witness, all in violation of 18 U.S.C. § 371. [Lexington Criminal Action No. 5: 18-CR-059-DCR] In return, the United States agreed to dismiss the charges in Lexington Criminal Action Nos. 5: 16-022-DCR and 5: 17-104-DCR upon entry of judgment in this matter. [Lexington Criminal No. 5: 18-059, Record No. 7]

Conn pleaded guilty to the information on June 4, 2018 and was sentenced on September 7, 2018. Conn's offense level of 43 and criminal history category of II produced a guidelines range of life. However, each count of conviction carried a statutory maximum sentence of 60 months. *See* 18 U.S.C. § 371. Because the statutorily-authorized maximum sentences were less than the minimum of the applicable guidelines range, the guidelines range became 180 months. *See* U.S.S.G. § 5G1.2(b). Consistent with the parties' plea agreement, the Court sentenced Conn to a 60-month term of imprisonment on each of the three counts, to run consecutively, for a total of 180 months. The Court ordered that the term would run consecutively to the 144-month term imposed in Lexington Criminal Action No. 5: 17-043-DCR. Conn waived his right to appeal the guilty plea, conviction, and sentence, and forfeited his right to bring a collateral attack under § 2255, with the exception of claims of ineffective assistance of counsel.

Conn did not pursue a direct appeal. However, on October 1, 2019, the Court received a partially-completed motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 which was prepared on form AO 243, and dated September 25, 2019. [Record No. 35-1] It consists of pages two, three, seven, eight, and thirteen. There is only a "ground three," for relief in which Conn claims that attorney White provided ineffective assistance due to a conflict of interest. Conn requested an extension of time until November 1, 2019, to file "a supporting 'all inclusive' memo of law." That request was denied. [Record No. 36]

The Court received a six-page handwritten motion to vacate, set aside, or correct sentence pursuant to § 2255 on October 8, 2019, which is dated September 20, 2019. [Record No. 37] Conn again alleged that White provided ineffective assistance due to a conflict of interest. The motion contains an additional allegation that Coffey provided ineffective

assistance by advising Conn to plead guilty to the escape charge. Conn's handwritten § 2255 petition was docketed as a motion and submitted to United States Magistrate Judge Matthew A. Stinnett, who directed the United States to respond to the issues presented. *See* 18 U.S.C. § 636(b). [Record No. 40]

On November 18, 2019, Conn tendered a motion to amend the § 2255 petition, which Magistrate Judge Stinnett denied to the extent that the new issues raised therein did not relate back to the original § 2255 motion. [Record Nos. 43, 45] Conn has now filed a motion to reconsider the Magistrate Judge's decision denying the motion to amend. [Record No. 50] In support, Conn reports that it has just come to his attention that an incomplete AO 243 form/§ 2255 motion was filed in the record on October 1, 2019. He contends that on September 25, 2019, he mailed to the Court a 12-page AO 243/§ 2255 motion that included three grounds for relief. He suggests that a clerical error must be to blame for the omission and he has provided a copy of the completed AO 243/§ 2255 motion he purportedly tendered on September 25, 2019. [Record No. 50-1]

A prisoner's motion is deemed filed on the day he places it in the prison mail system. *Houston v. Lack*, 487 U.S. 266, 271-72 (1988). Conn concedes that he placed the handwritten § 2255 motion in the prison mail system on September 20, 2019, and that he placed the AO 243 form in the prison mail system on September 25, 2019. [Record No. 49, pp. 1-2] Accordingly, the handwritten motion is the operative § 2255 filing in this case. However, the Court previously determined that Conn's deadline for filing a § 2255 motion was September 27, 2019. Both motions are timely filed based on the dates Conn attests he placed them in the prison mail system.

When a prisoner files a second § 2255 motion before adjudication of a first § 2255 motion is complete, the second motion is construed as a motion to amend. *Clark v. United States*, 764 F.3d 653, 659 (6th Cir. 2014) (discussing *Ching v. United States*, 298 F.3d 174, 175 (2d Cir. 2002)); *United States v. Bibbs*, No. 12-cr-20332, 2017 WL 7805745, at *1 (E.D. Mich. Mar. 30, 2017) (collecting cases). The liberal standards of Rule 15 of the Federal Rules of Civil Procedure govern amendment of a petition for writ of habeas corpus under § 2255. *See Hodges v. Rose*, 570 F.2d 643, 649 (6th Cir. 1978). Had the Court received the 12-page AO 243/§ 2255 motion on October 1, 2019, it certainly would have granted Conn leave to amend his earlier, handwritten motion.[1] *See* Fed. R. Civ. P. 15(a). Accordingly, in the interest of resolving Conn's claims on the merits, the Court will consider all of the arguments raised in Conn's amended § 2255, which he contends he mailed to the Court on September 25, 2019. [Record No. 50-2] But because the new issues raised involve straightforward legal questions, no additional response from the United States is needed.[2]

## II.

A defendant who moves to vacate his sentence under 28 U.S.C. § 2255 must demonstrate the existence of an error of constitutional magnitude that had a substantial and injurious effect or influence on the proceedings; that the sentence imposed is outside the

---

[1]  It is still not entirely clear why Conn's handwritten motion, which purportedly was deposited in the prison mail system on September 20, 2019, arrived at the Court a week after the AO 243, which purportedly was deposited in the prison mail system on September 25, 2019. Regardless, the Court accepts Conn's version of events as true for the purposes of this analysis.

[2]  The United States tendered a response to Conn's § 2255 motion on December 27, 2019. [Record No. 47] Conn was permitted to tender a reply within 30 days of the government's response, but Conn has not done so and the deadline has expired.

statutory limits; or that there was an error of fact that was so fundamental, it rendered the entire proceeding invalid. *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011).

The Sixth Amendment to the United States Constitution guarantees that criminal defendants are entitled to the right of assistance of counsel. *Beasley v. United States*, 491 F.2d 687, 692 (6th Cir. 1974). To succeed on a claim of ineffective assistance of counsel, the defendant must satisfy two elements: that counsel's performance fell below an objective standard of reasonableness and that the defendant was prejudiced by counsel's performance. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

A defendant who seeks to challenge the validity of his guilty plea based upon a claim of ineffective assistance of counsel may do so by showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003). Alternatively, a defendant may succeed on an ineffective-assistance claim by showing that there is a reasonable probability that, but for counsel's errors, "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Rodriguez-Penton v. United States*, 905 F.3d 481, 487 (6th Cir. 2018) (quoting *Missouri v. Frye*, 566 U.S. 134, 147 (2012)).

Conn has the burden of proving his allegations by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

### III.

**A.** **Counsel's Advice Concerning Escape and Other Conspiracy Charges**

Conn claims that attorney Coffey failed to raise proper challenges to the charge of conspiring to escape.[3] First, he contends that his guilty plea to this charge was not knowing and voluntary because he was not detained "in custody so as to trigger escape conviction." He also complains that the charge "failed to include reference to basis of original confinement nor specify nature of confinement." [Record No. 50-2, p. 4]

Any suggestion that Conn's guilty plea was not knowing and voluntary is belied by the colloquy that took place in open court during the change-of-plea hearing. The undersigned *scrupulously* followed the procedures required under Rule 11 of the Federal Rules of Criminal Procedure and the defendant is bound by the answers he gave in response to the Court's questions. *See United States v. Todaro*, 982 F.2d 1025, 1029 (6th Cir. 1993). The undersigned read the lengthy factual basis of the plea agreement aloud during the hearing. Conn, a former attorney, advised the Court that the factual basis was true and correct. Additionally, he reported that he had reviewed the agreement with attorney Coffey, which he also acknowledged by placing his initials in the lower right corner of each page of the factual basis.

When asked to summarize in his own words what he had done to be guilty of conspiring to escape, Conn stated that he and his former employee, Curtis Wyatt, had discussed ways that he could abandon his GPS monitoring and not report for sentencing. Conn further stated that he did eventually leave and "was gone for about six months" until he was "brought back by

---

[3] Title 18 of the United States Code, section 371, provides: If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

the government." Conn advised the Court that he wished to plead guilty to the information because he was in fact guilty and for no other reason.

Unambiguous terms agreed to by the defendant in open court will be enforced. *McAdoo v. Elo*, 365 F.3d 487, 496 (6th Cir. 2004). Further, solemn statements made in open court "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Conn clearly demonstrated his ability to knowingly and voluntarily enter a guilty plea in this matter, and he has not pointed to any factors which place that status into question.

It appears that Conn's real argument is that his conduct does not constitute escape. Title 18 United States Code, Section 751, prohibits escape or attempted escape from the custody of the Attorney General or his authorized representative, any institution or facility in which a defendant is confined by direction of the Attorney General, or from any custody under "or *by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge. . . .*" (emphasis added).

Count 2 of the information charged that, beginning in or around June 2016, and continuing through June 2017, Conn conspired with other persons including Curtis Lee Wyatt to escape from custody. [Record No. 4, pp. 4-5] Both the information and plea agreement provided extensive factual background underlying the charge. To wit, Conn was charged with various felony offenses, including conspiracy to commit mail and wire fraud and the Court issued a warrant for his arrest. [Record No. 7-1, p. 18] Following Conn's arrest and initial appearance, this Court ordered Conn to be confined via home incarceration at his residence in Pikeville, Kentucky, with active electronic monitoring, pending trial. He was ordered to appear in person at all future court hearings. *Id.* at p. 19.

Conn received permission from the United States Probation Office ("USPO") to leave his residence to travel to Lexington, Kentucky on June 1, 2017, for the purpose of preparing to testify at a co-defendant's trial. *Id.* But instead of returning to his residence on June 2, 2017, as required by USPO, Conn met with Wyatt who supplied him with a vehicle and Faraday bag. *Id.* at p. 21. At around 8:00 p.m. on June 2, 2017, Conn severed the Court-ordered electronic monitoring device from his ankle, placed it in the Faraday bag supplied by Wyatt, and fled the jurisdiction of the Court in the vehicle supplied by Wyatt. *Id.*

The plain language of section 751 supports a reading of "custody" that is not limited to physical confinement. Here, Conn was in custody by virtue of a felony arrest warrant issued by this Court and an April 12, 2016 Release Order which placed Conn on home incarceration with electronic monitoring and prohibited travel outside the Eastern District of Kentucky. Additionally, Conn was ordered to appear in person at all court hearings involving him. [Lexington Criminal No. 5: 16-022-DCR, Record No. 40]

Courts have routinely recognized a broad definition of custody, which merely requires some restriction on a defendant's freedom that prevents him from coming and going at will. *See United States v. Sack*, 379 F.3d 1177, 1179 (10th Cir. 2004); *United States v. Rudinsky*, 439 F.2d 1074, 1076 (6th Cir. 1971). And the United States Court of Appeals for the Sixth Circuit has recognized that a defendant may violate § 751 by escaping from home confinement while awaiting trial for fraud. *United States v. French*, 107 F. App'x 569 (6th Cir. 2004).

Conn suggests, alternatively, that the information was not sufficiently specific because it "failed to include reference to basis of original confinement" or "specify nature of confinement." This argument makes little sense. An indictment must fairly inform a defendant of the specific charge against which he must defend and enable him to "plead an acquittal or

conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Here, Conn waived his right to prosecution by indictment and pleaded guilty to an information, which was accompanied by a lengthy statement of facts which detailed the nature of Conn's confinement. As Conn acknowledged during his re-arraignment hearing, he was well-aware of these facts and had reviewed them with his attorney. He has not identified any aspect of counsel's performance that was deficient, nor has he shown that he was prejudiced by a lack of specificity in the manner in which Count 2 was charged.

Conn also asserts that the "conspiracy allegation failed to include a co[-]conspirator and petitioner could not be convicted of a conspiracy by himself." [Record No. 50-2, p. 4] It is unclear to which count Conn is referring, since each of the three counts in the information involved a conspiracy. And while the names of co-conspirators do not have to be known, *see United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991), each count named at least one other individual with whom Conn conspired, or agreed, to commit the substantive offense. Count 1, conspiracy to defraud the United States, alleged that Conn conspired with others, including David Black Daugherty and Alfred Bradley Adkins. Count 2, conspiracy to escape, alleged that Conn conspired with others, including Curtis Lee Wyatt. And Count 3, conspiracy to retaliate against a witness, alleged that Conn conspired with others, others including Charlie Paul Andrus.

In short, Conn's assertion is factually inaccurate and his argument is without merit.

### B. Counsel's Failure to Challenge 180-Month Sentence

Conn was sentenced to 60 months' imprisonment on each of the three convictions under 18 U.S.C. § 371. Consistent with the parties' recommendation, the undersigned ordered that the terms would run consecutively, for a total term of 180 months. [*See* Record Nos. 7, p.3;

18.] Conn now contends that attorney Coffey was constitutionally ineffective for failing to challenge this sentence because it exceeds the "[five years] prescribed statutory maximum prison term authorized by the general conspiracy provision." [Record No. 50-2]

A conviction under § 371 carries a maximum term of imprisonment of five years. Conn pleaded guilty to *three separate conspiracies*, which each violated § 371: conspiracy to defraud the United States; conspiracy to escape; and conspiracy to retaliate against a witness. The conspiracies spanned different time periods, involved different individuals, and had distinct goals. Each, standing on its own, carried a maximum term of imprisonment of five years, and there is no bar against imposing these sentences consecutively. *See, e.g., United States v. Smith*, 424 F.3d 992, 1002-03 (9th Cir. 2005). Conn recognized this prior to entering his guilty plea and agreed to recommend to the Court that he be sentenced to three consecutive 5-year terms of imprisonment, for a total term of 15 years. [Record No. 7, p. 3]

Contrary to Conn's suggestion, each conspiracy involved different conduct which violated a different underlying statute (18 U.S.C. §§ 371, 751, 1513). There is nothing to suggest—and Conn does not contend—that the United States was willing to enter into a plea agreement which recommended a shorter sentence. Conn has not identified any aspect of counsel's performance that was deficient or shown that he has been prejudiced by counsel's failure to make a frivolous argument. If not for the plea agreement that attorney Coffey helped negotiate in this matter, Conn would have been facing numerous fraud charges in Lexington Criminal Action No. 5: 16-022-DCR and multiple charges for escape and failure to appear in Lexington Criminal Action No. 5: 17-104-DCR. Put simply, Conn's post hoc desire for a more favorable plea agreement in this matter is not is not a valid reason for setting aside his sentence.

### C.     Attorney White's Alleged Conflict of Interest

Conn contends that his guilty plea, conviction, and resulting sentence are invalid because

> defense counsel who guided petitioner through plea process and resided [sic] over sentencing, operated with a clear 'conflict of interest' where [attorney] Scott White was involved with some of the alleged criminal conduct and other criminal conduct in Central America; but also participated and directed the tenor and 'four corners' of pre-plea [proffer] sessions with the FBI and U.S. Attorney's Office, and further negotiated the final plea agreement. And despite having to previously reveal all such in great detail to members of the U.S. Attorney's office, the plea and conviction moved forward anyway.

To the extent this claim includes sufficient factual details to raise an issue under § 2255, it is entirely contradicted by the record.[4] As previously stated, Conn retained attorney White near the outset of his initial criminal prosecution in 2016. [Lexington Action 5: 16-022-DCR] White assisted Conn in reaching a plea agreement in Lexington Criminal Action 5: 17-CR-043-DCR, in which Conn agreed to plead guilty to an information and the United States agreed to dismiss the charges in 5: 16-CR-022-DCR. But Conn breached the terms of the plea agreement in 5: 17-CR-043-DCR by fleeing to Honduras on June 2, 2017.

White made numerous public statements urging Conn to surrender following his escape. *Id.* at Record No. 298, p. 8. He was debriefed by FBI agents following his own return to Lexington, Kentucky from a mission trip to Nicaragua on June 3, 2017. *Id.* White also allowed agents to inspect his computer in an effort to locate the source of e-mail messages he had received from Conn while Conn was on the run.

---

[4] The Court must hold an evidentiary hearing when a factual dispute arises. However, no hearing is required when the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

Conn was arrested in Honduras in early December 2017. Still represented by White, he appeared in court for the first time following his apprehension on December 6, 2017. Conn requested a formal bond revocation hearing, which was scheduled on December 28, 2017. The United States submitted a status report on December 13, 2017, indicating that it intended to prosecute Conn in Lexington Criminal Action No. 5: 17-104-DCR and then proceed with his prosecution in Lexington Criminal Action No 5: 16-022-DCR. *Id.* at Record No. 287. White tendered a status report on December 27, 2017, stating that Conn would oppose the United States' prosecution of him in Lexington Criminal Action No. 5: 16-CR-022-DCR, as it was Conn's position that he had substantially complied with the terms of his plea agreement in 5: 17-CR-043-DCR. *Id.* at Record No. 297.

The following day, Conn moved for White to be appointed under the CJA because he could no longer afford to retain him. While the Court did not find that White had any conflict of interest in continuing to represent Conn, the Court did foresee "complaints down the line from Conn" should White continue as counsel in the matter. [Lexington Criminal No. 5: 16-CR-022-DCR, Record No. 302] Believing that such complaints could be eliminated by "introduction of fresh counsel in place of White," the Court appointed attorney Coffey on January 4, 2018. *Id.*

Conn has filed a motion to vacate, set aside, or correct his sentence in Lexington Criminal Action No. 5: 18-059-DCR. He contends that "Counsel White worked out with the counsel for the government the post-leaving charges to be resolved in an agreed-upon plea." [Record No. 37, p. 2] But attorney White never represented Conn in this action. In fact, this action was instituted nearly five months after White's termination from representing Conn in any criminal proceedings in this Court. [Lexington Criminal Nos. 5: 16-022-DCR, 5: 17-043-

DCR, and 5: 17-104-DCR] While White most certainly was involved in securing Conn's plea agreement in 5: 17-043-DCR, that is not the matter at hand.[5] And although some of the same information may have been involved, that does not change the fact that attorney Coffey represented Conn throughout the proceedings in this matter and he alone was responsible for negotiating the plea agreement on Conn's behalf. Conn cannot obtain § 2255 relief based on White's alleged shortcomings when he did not represent him in the case.

### IV.

This Court must issue or deny a certificate of appealability when it enters a final order that is adverse to the movant in a § 2255 proceeding. Rule 11 of the Rules Governing § 2255 Proceedings for the United States District Courts; 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may be issued only when the defendant has "made a substantial showing of the denial of a constitutional right." § 2253(c)(2). To satisfy this burden, the defendant must show that reasonable jurists could debate whether the petition should have been resolved in a different way or that the issues involved were adequate to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Conn's petition does not satisfy these standards. His claims regarding attorney Coffey's performance to do not come close to meeting the standards for ineffective assistance of counsel under *Strickland*, 466 U.S. 668 and its progeny. As explained previously, the conspiracy to escape charge was well-supported by the extensive factual basis that accompanied the plea agreement, which was read aloud during re-arraignment and which Conn acknowledged by initialing every page. And Conn's dissatisfaction with the length of his

---

[5] Judgment was entered in that matter on July 17, 2017.

sentence is not a basis for concluding that counsel provided ineffective assistance. There is no indication that a different plea agreement was available or that the undersigned would have been willing to impose a shorter sentence. Finally, Conn cannot receive habeas relief based on an attorney's alleged conflict of interest when that attorney did not represent him in the instant action.

V.

Based on the foregoing, it is hereby

**ORDERED** as follows:

1. Defendant Eric Conn's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Record No. 37] is **DENIED**.

2. The defendant's motion to reconsider [Record No. 50] is **GRANTED** to the extent that the Court has considered the arguments presented in the filings at Record Nos. 35, 37, 43, and 50. However, the relief requested under § 2255 is **DENIED**.

Dated: January 31, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky